**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE ESTATE OF MASSIMO and ELENA VIGNELLI and VIGNELLI DESIGNS, INC. | **No.** |
| Plaintiffs,<br>v. | **ECF Case** |
| RIZZOLI INTERNATIONAL PUBLICATIONS, INC, MONDADORI LIBRI S.P.A., MONDADORI ELECTA S.P.A., BEATRIZ CIFUENTES-CABALLERO, individually and as an officer of WATERHOUSE CIFUENTES DESIGN, LLC, and WATERHOUSE CIFUENTES DESIGN, LLC | **COMPLAINT**<br><br>**JURY DEMANDED** |
| Defendants. | |

Plaintiffs, the Estate of Elena "Lella" and Massimo Vignelli ("Vignelli Estate"); and Vignelli Designs, Inc. ("Vignelli Designs"), by and through their undersigned attorneys, Chinta Perdomo Berks & Fratangelo LLP., for their complaint against Defendants Rizzoli International Publications, Inc., Mondadori Libri S.P.A.; Mondadori Electa, S.P.A.; and Beatriz Cifuentes-Caballero, individually and as member Waterhouse Cifuentes Design, LLC.; and Waterhouse Cifuentes Design, LLC., allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Vignelli Estate and Vignelli Designs bring this action for injunctive relief and damages arising from Defendants' willful and intentional acts of copyright and trademark infringement, false designation of origin, dilution, false advertising, and misappropriation of labor, skill and goodwill, in violation of the laws of the United States and the statutory and common laws of the State of New York.

2.     In particular, this case concerns Defendants' willful infringement of some distinctive sketches made by renowned designer Massimo Vignelli, and well-known word and logo trademarks used in connection with the famous VIGNELLI brand.  After Massimo and Lella Vignelli expended extensive time and effort developing and creating a legacy of their distinctive design approach featuring these trademarks, and long after consumers and designers had come to recognize such marks and associate them exclusively with the Vignellis, Defendants launched a design book after misappropriating some Vignelli sketches, and misrepresenting that the book was co-designed by the late Massimo Vignelli and endorsed by the Vignelli Estate. Defendants undertook this conduct in bad faith, without the consent of the Vignelli Estate and over the Estate's explicit objections, with the deliberate intent to improperly trade off and reap the benefits of the extensive goodwill associated with the VIGNELLI brand and VIGNELLI trademarks.

## THE PARTIES

3.     Plaintiff, the Estate of Elena "Lella" and Massimo Vignelli, duly represented by Valentina Vignelli, the daughter of Massimo and Lella Vignelli (jointly the "Vignelli Estate"), holds the intellectual property rights in the works of authorship that Lella and Massimo Vignelli created in their lifetime.  Ms. Vignelli has a legal residence in Brooklyn, New York.

4.     Plaintiff Vignelli Designs, Inc. ("Vignelli Designs") is a Delaware corporation authorized to do business in the State of New York, with registered offices located at 283 Hicks Street, PH Floor, Brooklyn, New York 11201. Vignelli Designs holds the intellectual property rights in the product designs of Lella and Massimo Vignelli and is the entity responsible for granting licenses to third parties in connection to said designs.

5.      Upon information and belief, Defendant Rizzoli International Publications, Inc.
("Rizzoli") is a domestic business corporation with a principal place of business located at 300
Park Avenue South, New York, NY 10010.  Rizzoli published a book entitled "design: Vignelli"
on October 23, 2018 (the "2018 Book").

6.      Upon information and belief, Defendant Mondadori Electa, S.p.A. ("Mondadori
Electa") is a foreign corporation with a registered office at Via Bianca Di Savoia 12, Milan, Italy
20122.

7.      Upon information and belief, Defendant Mondadori Libri, S.p.A. ("Mondadori
Libri") is a foreign corporation with a registered office at Via Bianca Di Savoia 12, Milan, Italy
20122.

8.      Upon information and belief, Defendant Mondadori Electa owns Rizzoli and is
the entity that currently publishes the 2018 Book in Italy.

9.      Upon information and belief, Rizzoli and Mondadori Electa have a sub-publishing
agreement, either directly or through their parent Mondadori Libri authorizing Mondadori Libri
through its fully owned subsidiary Mondadori Electa to publish and distribute the 2018 Book in
Italy.

10.     Upon information and belief, Defendant Beatriz Cifuentes-Caballero ("Ms.
Cifuentes") is a resident of the State of New York, County of New York.  Upon further
information and belief, Ms. Cifuentes executed a publishing agreement with Rizzoli for the 2018
Book authorizing Rizzoli as well as its affiliates, sub-publishers and licensees, including
Mondadori Libri and/or Mondadori Electa, to publish and distribute the 2018 Book worldwide.

11.     Upon information and belief, Defendant Waterhouse Cifuentes, LLC
("Waterhouse") is a domestic limited liability company with registered address located at 4-75

48th Street, Suite 3907, New York, New York 11109. Upon further information and belief, Waterhouse Cifuentes is a graphic design house jointly owned by Ms. Cifuentes and her partner Yoshi Waterhouse. Waterhouse Cifuentes currently advertises the 2018 Book through its website http://www.waterhousecifuentes.com.

## JURISDICTION AND VENUE

12.    This court has subject matter jurisdiction over Plaintiffs' federal copyright infringement, false designation of origin, and trademark dilution claims under 28 U.S.C. §§1331 and 1338 and 15 U.S.C. §1125.

13.    This Court has supplementary jurisdiction over all claims arising under state law under 28 U.S.C. § 1367(a), because such claims are related to and arise from the same set of facts as Plaintiffs' federal claims.

14.    This court has personal jurisdiction over Defendants Rizzoli, Beatriz Cifuentes-Caballero and Waterhouse Cifuentes because these Defendants maintain a place of business within this judicial district.

15.    This court has personal jurisdiction over Defendants Mondadori Electa and Mondadori Libri pursuant to CPLR § 302(a) (1) and (3) because Defendants transact business within the state and the complained-of acts caused an injury to a person within the state and Defendants should have expected these acts to have consequences in the state and Defendants derive substantial revenue from international commerce.

16.    Venue is proper in this district under 28 U.S.C. §1391 and § 1400 because some of the Defendants reside in this district.

## FACTUAL BACKGROUND

### Lella and Massimo Vignelli:  A Life in Design

17.     Massimo Vignelli was a well-known Italian designer who lived and worked in New York from 1965 until his death in May 2014. Prior to New York, during the 1950s, Massimo Vignelli was doing design work in Italy. Together with his wife Lella, the Vignellis ran successful design businesses providing innovative solutions in a wide variety of fields, such as corporate identity programs, logos, packaging design, graphic design for books, posters, transportation and architectural graphics, commercial and corporate interior design, furniture and product design.  See **Declaration of Valentina Vignelli at ¶6.**

18.     Over the course of over half a century, Mr. Vignelli established himself as an authority in the design world and his name became synonymous with high quality but unique design concepts that touched a multitude of landmarks. The Vignellis had indeed designed everything "from a spoon to a city." Massimo Vignelli once made the humorous remark that The Vatican had been the only entity that did not become his client. **Id.**

19.     The Vignelli designs were quite present in major international cities but particularly in New York City.  The Vignellis were an integral part in making New York the design "mecca" that it currently is. **Declaration of Valentina Vignelli at ¶ 8.** The Vignelli designs have become New York City icons over the years.  Prominent and famous examples of Vignelli works are the Bloomingdales' logo, colored boxes and brown bags; the interiors and organ of St. Peters Lutheran Church under the Citicorp Building; the famed MTA New York Subway map and signage systems of which derivatives of Massimo Vignelli's 1972 design concepts are still in use today.   **Id.**

20.    For the New York Metropolitan Transportation Authority ("MTA") project, Massimo Vignelli provided information conveying systems for mass public use. He also designed the recently retired logo and plane graphics of American Airlines. The works of Lella and Massimo Vignelli are in the permanent collections of the New York Museum Modern Art ("MoMA"), the New York Metropolitan Museum, as well as all in the major design collections worldwide.  **See Declaration of Valentina Vignelli at ¶ 11.**

21.    The Vignellis' work was repeatedly recognized at state, national, and international levels.  In 2003, Massimo Vignelli was awarded, with his wife and partner Lella,  the National Lifetime Achievement Award from the National Museum of Design at Cooper-Hewitt, Smithsonian Design Museum, New York. **Id at ¶ 11.** Massimo Vignelli received the first Presidential Design Award in 1985 from former United State President, Ronald Reagan for the National Park Service Publications Program in which Massimo employed the use of his now famous design grid to allow park rangers to individually design their respective parks' brochures. **Id at ¶ 9.**  On an international scale, Italy awarded Massimo Vignelli the title of Commander of Order of Merit in 2009. **Id at ¶ 12.** Massimo Vignelli developed the groundbreaking grid technique before personal computers were available.  **Id at ¶ 9.**

22.    Much of the Vignellis' work, including their minimalistic and remarkable design concepts, preceded and influenced approaches that are relevant in today's computing/software world. **Declaration of Valentina Vignelli at ¶ 10.**

23.    Massimo Vignelli was an ambassador in his own right for design, order and education. He was highly praised for his talent as a teacher, critic and celebrity in the New York design scene and all over the world.  **Id at ¶ 12.** Massimo's involvement in any project, seminar, debate or lecture, or even dinner, was the celebrity attraction. His constructive critique and

enthusiasm made him a mentor for many students and colleagues. **Declaration of Valentina Vignelli at ¶ 13.**

24.     The unique and famous design which has distinguished the work of Massimo Vignelli was achieved by combining creativity, unique style, and innovation. Massimo Vignelli's approval and personal mark "Vignelli" was, and still is, a symbol of high quality in the design community worldwide and especially in New York and Italy.   **Declaration of Valentina Vignelli at ¶ 13.**

25.     Following the deaths of Lella and Massimo Vignelli, the Vignelli Estate and Vignelli Designs are in charge of the intellectual property rights in Vignellis' works, including reproduction of Vignellis' images and the reproduction and licensing of Vignellis' products. **See Declaration of Valentina Vignelli at ¶ 31.**

**The Trademarks: "Vignelli" and "design: Vignelli"**

26.     During the 1950s, Massimo and Lella Vignelli first began using their name VIGNELLI in connection with their design work to denote it originated from them. Over the next several decades, they continued using the mark VIGNELLI for their design work and business. They established a design agency called Vignelli Associates in 1969 and subsequently incorporated Vignelli Designs in 1978 in New York. They also established the Vignelli Design Center in 2010 in New York.   See Declaration of Valentina Vignelli at ¶ **14.**

27.     In or about 1976, Massimo and Lella Vignelli began using the logo "design:Vignelli" for their design work - white letters in "Our Bodoni" typeface on a vivid red square background. This logo was first used in connection with an exhibition held in the Boston Architectural Center in Boston, MA, USA and subsequently numerous other exhibitions.   **See Exhibit 1 to the Declaration of Valentina Vignelli.**

28.     Between the years 1989 and 1993, a major exhibit entitled "design:Vignelli" toured Europe.  During this period, Massimo Vignelli personally taught seminars at institutions worldwide, and a lot of design students from all over the world traveled to New York City aspiring to intern and work at the Vignelli offices.  **Id at ¶ 15.** This logo was prominently used by Mr. Vignelli on the cover of his 1990 book, which was designed by him and published by Rizzoli and entitled "design:Vignelli." **Id at ¶ 15.**

29.     Over the span of several decades, the Vignellis branded their multitude of designs as "Vignelli," using their signature name both as a stand-alone word mark and as part of the logo mark "design:Vignelli." The logo mark also became the distinctive trade dress of the VIGNELLI brand. Both these marks became well-known, well-established, and indeed famous in the design community.  In 1991, Lella and Massimo Vignelli launched a clothing line for men and women under their trademark "design:Vignelli."   The Vignellis obtained a US trademark registration for the mark "design: Vignelli" in connection with various clothing items in international class 025. See **Exhibit 2 and Exhibit 3 to the Declaration of Valentina Vignelli.**

### The Vignelli Center for Design Studies and the Vignelli Legacy

30.     In 2010, with Lella and Massimo Vignelli´s contribution, The Vignelli Center for Design Studies at the Rochester Institute of Technology in New York ("The Vignelli Design Center at RIT") opened. This center also houses the Vignelli professional archives (the "Vignelli Archives"), including the sketches of Massimo Vignelli. See Declaration of Valentina Vignelli at **¶ 21**.  In addition to serving as the Vignelli Archives, the Vignelli Design Center at RIT also has classrooms, offices, workspaces and exhibition halls and is well known for its active multidisciplinary design programs. The Vignelli Archives are made available for educational, scholarly and professional use. Professional lectures and workshops are held there throughout the

year.  The Vignelli Archives handles requests from writers, researches, students and filmmakers from all over and is also active on social media, generating interest in design and inspiring students and researchers around the world.  See https://vignellicenter.cias.rit.edu. **Id at ¶¶ 21-23.**

31.     The Vignelli Design Center at RIT, pursuant to authorization from Vignelli Designs and Vignelli Estate, uses the logo "design:Vignelli" for its permanent exhibition as well as in the advertising of numerous exhibitions and seminars dedicated to Massimo and Lella Vignelli's work. **See Exhibit 4.** Most recently, the logo mark was used in April 2018 in connection with an exhibit and lecture held at the Italian Embassy in Washington, entitled "The Vignelli Legacy."

32.     The distinctive design approach signified by the VIGNELLI trademarks is visible throughout the body of work in the Vignelli Archives. This distinctive approach taught and practiced by Vignelli is described in the *Vignelli Canon*, as well as in numerous other monographs on and by Massimo Vignelli.

### Vignelli Books: Meticulous and Precise Design

33.     Massimo Vignelli was famous for his meticulous skills in sketching book layouts. Vignellis' exceptional technique is carefully explained in a video entitled "*Massimo Vignelli Makes Books*" See  https://vimeo.com/64811872. **Id at ¶ 22.**

34.     Massimo Vignelli was also famous for his meticulous graphic design in designing books.  The complex process oftentimes involved cropping previously selected photographs and thereafter, drawing a sketch from which one could accurately measure how much to crop or enlarge the photographs in order to ensure proper measurements in connection with the book layout one was trying to achieve. Massimo Vignelli created a sketch for each page he designed

while making design choices as to how the layout would look and feel to the reader. **Declaration of Valentina Vignelli at ¶¶ 19-20.**

35.     Massimo Vignelli, always thinking about the design community as a whole, authored, designed and published free digital books containing his famous graphic design guidelines.  In addition to the multiple videos online, books such as "*The Vignelli Cannon*" and "*Designed by Lella*" illustrate Vignelli's unique design principles. *The Vignelli Canon* was conceived as a guide to achieve good design by applying certain principles and is often used for educational purposes as it provides in depth guidance about the choice of paper size, grids, margins, columns, typefaces, justification, type size relationships, rules, contrasting type sizes, scale, color layout and white space, among others. *See "*The Vignelli Cannon" at https://www.lars-mueller-publishers.com/vignelli-canon.  The book "*Designed by Lella*" is a tribute book from Massimo Vignelli to his wife's often unrecognized work because she was a woman. **Id at ¶¶ 17-18.**

### The 1990 Book and Copyright

36.     In 1990, Massimo Vignelli designed a book entitled "design:Vignelli" ("1990 Book"). Mr. Vignelli retained the intellectual property rights in his designs included in the book as well as in the logo "design:Vignelli." **See Exhibit 1 (copy of photograph of the 1990 design: Vignelli book).**

37.     The 1990 Book has been registered as a compilation of the texts and photos before the United States Copyright Office under Reg. No. TX0002978777.  **Exhibit 2 (copy of Certificate of Registration).**

38.     The 1990 Book was about the Vignelli design legacy with multiple contributors, including writers and photographers.   Upon information and belief, the contributors also

retained their rights in their intellectual property. For example, Joseph Rykwert, the author of the essay "*Vignelliana*" featured in the 1990 Book, secured a separate and distinct registration for his essay before the U.S. Copyright Office. [See Reg. NoTX0002978778]. **See Exhibit 3 (Copy of Certificate of Registration of "Vigneliana" 1990 Edition).**

39. Plaintiffs sell the well-known 1990 Book even today and intend to sell or auction the book in the future to raise funds for charitable purposes. **See Declaration of Valentina Vignelli at ¶ 16.**

### Beatriz Cifuentes-Caballero

40. Upon information and belief, Ms. Cifuentes joined Vignelli Associates in 2004 and worked as a graphic designer under the supervision of Massimo and Lella Vignelli.

41. Shortly after Lella Vignelli's passing in 2016, the Vignelli Estate was in charge of organizing the personal property of Lella and Massimo Vignelli pursuant to their last wishes. All professional artifacts were sent from their home, which also served as the couple's office, to the Vignelli Archives to be properly sorted, cataloged and archived. A portion of the Vignelli personal artifacts were sent to the Vignelli Archives. **See Declaration of Valentina Vignelli at ¶¶ 25-26.**

42. During this time, Valentina and Luca Vignelli, the children of Massimo and Lella Vignelli, contacted several ex-employees of Vignelli Associates to return some of their personal belongings left behind. At that time, due to the graphic design work prepared for each of the memorials, Luca and Valentina realized that Ms. Cifuentes had in fact kept personal property belonging to Massimo Vignelli that needed to be returned to the Vignelli Archive. **Id.** At the time, Luca and Valentina Vignelli did not know that Ms. Cifuentes was in possession of Massimo Vignelli's sketches, a fact that was later discovered by the unauthorized publication of

the 2018 Book. These sketches are the original works of Massimo Vignelli that were unpublished at that time.  **See Declaration of Valentina Vignelli at ¶ 27**

43.    A year before, in 2015, the Vignelli Estate requested Ms. Cifuentes to return the keys to Massimo and Lella Vignelli's apartment that she had kept since the time of Mr. Vignelli. She was also informed that she needed to consult with the representatives of the Estate before sharing information through the Vignelli Associates' Facebook page. Recently, Ms. Cifuentes used the Vignelli Associates Facebook page to promote the 2018 Book.  **See Exhibit 5-A to the Declaration of Valentina Vignelli.**

44.    In addition, Valentina and Luca also requested Ms. Cifuentes to furnish all administration rights to the existing Vignelli related websites. These include the websites that had content related to the books, "The Vignelli Cannon" and "Designed by Lella" as well as to the Vignelli Associates website. Valentina and Luca's request also covered certain works of Massimo Vignelli's that had been stored on digital disks and family photos.    **See Declaration of Valentina Vignelli at ¶ 27.**

45.    Ms. Cifuentes also has an award given to Vignellis in her possession. The award was given by The One Club to commemorate the induction of the Vignellis into their Creative Hall of Fame.   As Lella Vignelli could not attend due to her increasingly deteriorated heath following Massimo's passing, Luca and Valentina Vignelli had authorized Ms. Cifuentes to collect the award.  Since then, the award has been in Ms. Cifuentes possession even though it clearly and importantly belongs in the Vignelli Archives. Ms. Cifuentes has had ample opportunities to return the award as well as the sketches but she has failed to do so to date.  **See Declaration of Valentina Vignelli at ¶ 28.**

46.     Ms. Cifuentes had been Massimo Vignelli's employee for 10 years prior to his passing and thus, she was well aware that the Vignelli Estate and Vignelli Designs were in charge of authorizing all clearances in connection with Lella and Massimo Vignelli's work.  In fact, Ms. Cifuentes had sent multiple requests to the Vignelli Estate from third party authors to reproduce images shortly after Mr. Vignelli's passing.  **See Declaration of Valentina Vignelli at ¶ 29.**

47.     For example, on September 29, 2016, Ms. Cifuentes reached out to Valentina and Luca Vignelli and advised them of multiple requests from third parties seeking to clear the use of Vignelli related works.  In one email exchange, Ms. Cifuentes writes "we constantly receive requests from blogs, magazines, newspapers and authors requesting material. We don't want to bother you constantly with this or forwarding requests back to you on a regular basis. I promise it would be overwhelming."  **See Exhibit 5 to the Declaration of Valentina Vignelli.**

48.     In addition to offering her assistance to handle third party clearance requests, Ms. Cifuentes specifically warned Valentina and Luca that "people want to use images saying they are Vignelli work when they are not!"  Valentina Vignelli made it clear to Ms. Cifuentes that any and all third-party requests should be cleared with her first. **Id at p. 1.**

49.     In spite of having received specific instructions from Ms. Vignelli as to third party clearances and who had overall authority over Vignelli related works, Ms. Cifuentes organized and marketed events to celebrate the Vignelli works, without Ms. Vignelli's knowledge or permission, and used these events for self-promotion. **Declaration of Valentina Vignelli at ¶ 32.**

50.     Indeed, Ms. Cifuentes and her partner, Yoshi Waterhouse, promote themselves as the absolute heirs to the Vignelli legacy. This fact is clearly visible on their company´s website,

www.waterhousecifuentes.com whose main selling point is its association with Vignelli and which features mostly projects commissioned to Vignelli Associates.  **See Exhibit 7 to the Declaration of Valentina Vignelli.**

51.     Recently, Ms. Cifuentes used the Vignelli Associates Facebook page to promote the 2018 Book.   **See Exhibit 5-A to the Declaration of Valentina Vignelli.**

52.     In addition to the Waterhouse website, Ms. Cifuentes is selling copies of the 2012 New York City Subway Diagram designed by Massimo Vignelli.  A copy of the poster retails for $300 per unit and a signed copy for $1200. **https://superwarmred.com/collections/posters.**

53.     In 2013, a year before his death, in an email to Ms. Cifuentes, Massimo Vignelli expressed his tiredness and a reluctance to work on the "Yellow Book project" which had been on and off in development for years.  **See Declaration of Valentina Vignelli at ¶ 36.**

54.     Notwithstanding the above**,** in an essay entitled "The Unfinished Project" which Ms. Cifuentes wrote as an introduction to the 2018 Book, Ms. Cifuentes maintains that during his lifetime, Massimo Vignelli vested Ms. Cifuentes with authority to finish what is now the 2018 Book. Ms. Cifuentes writes in her essay "on his death bed, Massimo made me promise I would finish the book." **See Exhibit 10.**

55.     Notwithstanding Ms. Cifuentes' representation in her essay that she had the authority to finish Vignelli's work and share design credit with him, the Last Will and Testament of Massimo Vignelli does not have a provision involving the 2018 Book (or even the project with Ms. Cifuentes).   **See Declaration of Valentina Vignelli at ¶ 48.**

**Rizzoli and Cifuentes Knowingly Refused to Seek Clearance from the Estate.**

56.     After Massimo's passing, Ms. Cifuentes expressed her intention to write a book about him, a legacy book of sorts. Indeed, on or about October 22, 2014, Ms. Cifuentes sent

Luca Vignelli a template release for his signature seeking permission to use Luca's photographs for a Vignelli "monograph."  **See Declaration of Valentina Vignelli at ¶ 38.**

57.     In the spring of 2015, Charles Miers, a publisher at Rizzoli, approached Valentina Vignelli at a social event in Milano, Italy and loosely stated that Rizzoli was working with Ms. Cifuentes on a book project about Vignelli (the "Project").  Valentina Vignelli did not know anything about the Project but expected to be contacted by Rizzoli with the details.   See **Id.**

58.     Vignelli Estate's knowledge about the existence of a book project influenced by Vignelli concepts did not raise any red flags to the Estate because this would not have been the first time someone expressed an interest to write about the Vignelli design legacy. In fact, most recently, a children's book commemorating  Massimo Vignelli's achievements, "The Great New York Subway Map by Emiliano Ponzi,"  was published by the Museum of Modern Art in association with the New York Transit Museum, after all the  requested edits were incorporated and the required clearances were  properly secured from the Vignelli Estate. **Id at ¶ 39.**

59.     In May 2018, Ms. Cifuentes sent an email to Valentina and Luca Vignelli requesting feedback on her preliminary drafts of the Project. Valentina Vignelli provided comments to what she thought was Ms. Cifuentes' "work in progress."  The Vignelli heirs also requested a meeting with Ms. Cifuentes and Rizzoli at that time.  **See Exhibit 8 to the Declaration of Valentina Vignelli.**

60.     In June 2018, Ms. Cifuentes sent another draft and Ms. Vignelli specifically asked if this recent draft was meant to be a final.   Ms. Cifuentes responded that the book will "get worse before it gets better." **See Exhibit 8 at p. 8.**

61.     Consequently, Ms. Vignelli expected to receive a new draft based on her latest comments and that Rizzoli, as the publisher, would formally contact the Vignelli Estate to obtain

the required clearances before the publication of what she believed was a monograph or tribute book about Vignelli. Since the Estate was never contacted by either Ms. Cifuentes or Rizzoli, Ms. Vignelli reasonably assumed that the Project was still in the works. **See Declaration of Valentina Vignelli at ¶ 42**.

62.     From May 2018 to early October 2018, the Vignelli Estate did not hear much about the Project.  Neither Ms. Cifuentes nor Rizzoli contacted the Estate or the Vignelli Center for Design at RIT to seek permission to use the proprietary materials that form the basis for the 2018 Book. **Id at ¶ 43.**

63.     Ms. Cifuentes knew that the materials she compiled for the Project belonged to the Estate, at least given her decade long tenure at Vignelli Associates and her exchanges with Valentina and Luca Vignelli regarding clearances following the death of Massimo Vignelli.   In addition, Jennifer Whitlock, the archivist of the Vignelli Center for Design Studies, reminded Ms. Cifuentes to seek and obtain express permission from the Estate to publish the Vignelli materials she was using for her Project. **See Exhibit 6 to the Declaration of Valentina Vignelli**.

64.     The Project eventually culminated into the 2018 Book, which included among other things, 102 original sketches by Mr. Vignelli. In October 2018, Valentina Vignelli learned from a friend that Rizzoli was having a launch party on October 23, 2018 for a book about her father which she was quite surprised she knew nothing about.  Rizzoli had neglected to invite Luca and Valentina Vignelli, the representatives of the Vignelli Estate, to the book launch parties in New York City and Milan.  **See Declaration of Valentina Vignelli at ¶¶ 43,45 and Exhibit 9.**

**The Estate Formally Objects to The Publication of The Book and Notifies Rizzoli**

65.     Immediately after learning about the purported launch, on October 16, 2018, Ms. Vignelli contacted Rizzoli and Ms. Cifuentes to express the Estate's unequivocal disapproval of the attribution of the 2018 Book design to Massimo Vignelli. **See Exhibit 11 to the Declaration of Valentina Vignelli.**

66.     The Vignelli heirs also notified Rizzoli that the Estate had a copyright infringement claim as Rizzoli and Ms. Cifuentes never sought permission from the Estate to publish the 2018 Book. **See Exhibit 12 to the Declaration of Valentina Vignelli.**

67.     Furthermore, the Estate clearly informed Rizzoli as early as October 16, 2018 that permission to reproduce photos and essays was never actually sought from third party authors and that the Estate was concerned that this fact would subject the Estate to potential liability from said third party authors because Massimo Vignelli is credited as the author and designer of the 2018 Book.   In an email dated October 16, 2018, Charles Miers of Rizzoli admits that Massimo Vignelli is credited "only" as co-designer of the 2018 Book.  **Exhibit 13.**

68.     On October 20th, 2018, Valentina Vignelli informed Rizzoli's Charles Miers, "we have concerns about all third-party clearances. Does Beatriz have any clearances? She didn´t have one from Vignelli.  Again, until we see the whole book, it´s impossible to move forward here. Nice that by contract only she would be liable, but we do not wish that for her, we are a bigger target, and it would damage the Vignelli reputation. For these reasons, we request to see all clearances."  In response, Charles Miers acknowledged that Rizzoli did not perform an adequate due diligence regarding clearances and stated, "lets hope that there aren't any issues and lets also be proactive about solving them" **See Exhibit 13-A to the Declaration of Valentina Vignelli.**

69.     On October 21, 2018, after several exchanges between the parties, Rizzoli purportedly agreed to amend the title page in existing copies of the 2018 Book and remove Massimo Vignelli's name from the design credit and correct the copyright page. Rizzoli led the Estate to believe that their demands would be met. **Id at Exhibit 14 p. 2.**

70.     Notwithstanding the October 21, 2018 commitment, only two days later on October 23, 2018, Charles Miers advised Ms. Vignelli that neither Rizzoli, nor Ms. Cifuentes have any legal or moral obligations to the Estate and stating that they wish to settle "very, very peacefully" and requesting the Estate's full support for the 2018 Book.   However, the Estate's support for the 2018 Book was conditioned upon Rizzoli fully acknowledging, supporting and agreeing to implement the requested changes, including, without limitation, removing Massimo Vignelli's name from the design credit, including an "erratum slip" and overall ensuring that all press releases and promotional material, including any press packets prepared for the event, reflect the corrections.   **See Exhibit 15 p.1, 2 to the Declaration of Valentina Vignelli.**

71.     On more than one occasion and in good faith, the Estate unequivocally demanded that Rizzoli refrain from publishing the 2018 Book.

72.     On October 23, 2018, the date of the scheduled release, Ms. Vignelli on behalf of the Vignelli Estate, sent Rizzoli several proposals exploring potential options for a resolution of the dispute. In one email exchange, Miers writes "I ask that you agree to let us continue with the event tomorrow night, with an erratum slip in books."  The Vignelli Estate was willing to allow the event to continue provided Rizzoli agreed to physically remove the unauthorized and misleading title and credits pages from the books displayed at the event, and included the erratum slip in their place. However, Rizzoli's Charles Miers informed the Estate that he will be

unavailable to answer for another week, willfully ignoring the demands of the Estate to refrain from publishing the 2018 Book.  **Exhibit 16 to the Declaration of Valentina Vignelli.**

73.     Despite the Estate's vigorous opposition, the 2018 Book was published both in the United States and in Italy crediting Massimo Vignelli as the designer and co-author. Following the publication, on October 29, 2018, Rizzoli proposed to make some changes in the copies that were left in the warehouses in both countries.

74.     In addition to Defendants' unauthorized use of the materials, the 2018 Book, including its addendum, purports to convey an endorsement from the Estate.   The 2018 Book falsely suggests that the Estate endorsed its production which is quite damaging to the well-established and stellar Vignelli reputation **See Exhibit 17 to the Declaration of Valentina Vignelli.**

75.     Rizzoli and Mondadori launched and marketed the 2018 Book as the definitive and last work by Massimo Vignelli.

76.     The 2018 Book infringes on copyrighted works belonging to the Vignelli Estate, particularly approximately 102 registered sketches that were published for the first time on October 23, 2018 in the 2018 Book (the "Registered Works").  **See Exhibit 4 (Copy of Certificate No. VA2-127-796).**

77.     The 2018 Book contradicts the Vignelli design methods, teachings and is confusing to all Vignelli scholars attempting to learn the cannons that Massimo Vignelli left behind as his legacy of outstanding design. Defendants actions have caused irreparable harm to the Vignelli legacy and reputation. **See Exhibit 18 to the Declaration of Valentina Vignelli.**

## AS AND FOR A FIRST CAUSE OF ACTION COPYRIGHT INFRINGMENT
## 17 U.S.C. §§ 101 et. seq
### (against All Defendants)

78.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "77" as though fully set forth herein.

79.     Massimo Vignelli is the author of multiple designs and sketches that Defendants use throughout the 2018 Book without the permission or authorization of the Vignelli Estate.

80.     The Estate is the sole proprietor of all intellectual property rights, title and interest into said designs and sketches, including the copyrights in these designs and sketches.

81.     Defendants had access to the copyrighted works through Ms. Cifuentes, a former employee of Vignelli Associates who had been working at the home of Massimo and Lella Vignelli, who possessed a key to the Vignelli home, and had access to said copyrighted works..

82.     On October 23, 2018, Defendant Rizzoli published the 2018 Book, design: Vignelli, which primarily consists of photographs of Massimo Vignelli's works and designs, including his sketches.

83.     Rizzoli reproduced Massimo Vignelli's works without the Estate's authorization and without any legal right. The infringing 2018 Book reproduces hundreds of separate works of visual arts and multiple texts that are authored by Massimo Vignelli and are property of the Estate. In addition, the 2018 Book reproduces essays and photographs of third parties without the permission of their respective owners.

84.     The Estate has a valid copyright registration on many of the works that have been reproduced without authorization and for which it holds registration certificate VA2-127-796.

20

85.     Defendants prepared a compilation using unpublished works of Massimo Vignelli that were obtained without Plaintiffs' authorization and then published by Defendants for the first time with the release of the 2018 Book on October 23, 2018.

86.     Defendants used the compilation to create the 2018 Book and later released the 2018 Book in New York City and in Milan.

87.     Since October 23, 2018, Defendant Rizzoli has distributed the 2018 Book in the United States and abroad and made the book largely available to the public through its distribution channel including through Amazon, Target and Barnes and Nobles.

88.     By reproducing Massimo Vignelli's works, preparing the compilation, publicly displaying, advertising and distributing the 2018 Book to the public in violation of 17 U.S.C. § 501, knowing that Plaintiffs own the rights in Massimo Vignelli's works, Defendants have infringed upon Plaintiffs' copyrights and have substantially harmed Plaintiffs. That Defendants' infringement is willful as they knew they had to clear the rights with the Estate and simply decided to forego the authorization.

89.     Defendants have intentionally, knowingly, and willfully reproduced the copyrighted works to personally benefit from the widespread consumer recognition of Massimo Vignelli's works and capitalize upon his and now his Estate's goodwill and reputation.

90.     The aforesaid infringements by Defendants of the Estate's copyrights continue to occur with Defendants' knowledge that such works are copyrighted, and the Defendants in committing the acts complaint of herein, have willfully infringed upon Plaintiffs rights under the Copyright Laws of the United States, Title 17 U.S.C. § 101, et seq.

91.     That Rizzoli not only had notice that clearance was necessary but also had actual knowledge that the Estate vehemently opposed the publication of the 2018 Book.

92.     The Book was not designed by Massimo Vignelli and this fact is evidenced in all of the new pages the Book introduces and that are not plagiarized from the earlier 1990 Book.  In addition, the manner in which the information is sequenced clearly show that the master Vignelli was not at work in the 2018 Book.  This fact is easily verifiable by comparing the 2018 Book to any of Massimo Vignelli's available book designs in the industry.

93.     The 2018 Book is an attempt to confuse and will highly likely confuse the public as to the source of its authorship and origin for purposes of increasing sales.

94.     Defendants' infringement of the Plaintiffs Copyrights irreparably damage Plaintiffs and Plaintiffs believe that Defendants will continue such infringements unless enjoined by this Court.

95.     As a result of aforesaid acts, the Estate has suffered a loss of profits and other damages, and Defendants have earned illegal profits in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants granting Plaintiffs the following relief:

(1) A permanent injunction preventing Defendants from further copying, marketing, publishing, selling, making derivative works, or otherwise commercially exploiting the Registered Works and the infringing 2018 Book;
(2) An accounting of Defendants' revenues from the sale of the 2018 Book;
(3) An award of damages that Plaintiffs have sustained as a result of Defendants' unlawful infringements together with Defendants' profits derived from such infringements, the total amount to be determined at trial and awarded jointly and severally against Defendants, or any statutory damages within the provisions of the Copyright Act pursuant to 17 U.S.C. § 504, including any enhancement of damages for willful infringement;
(4) An award to Plaintiffs of interest on any judgment, plus the costs and attorney fees incurred in this action; and
(5) Granting such other and further relief as it deems appropriate.

**AS AND FOR A SECOND CAUSE OF ACTION FOR FALSE DESIGNATION OF
ORIGIN, FALSE DESCRIPTION AND TRADE DRESS INFRINGMENT UNDER 15
U.S.C. § 1125(a)**

96.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through
"95" as though fully set forth herein.

97.     The "design:Vignelli" trade dress on the vivid red color background in "Pantone
Super Warm Red" also known as "Vignelli Red" with white letters in "Our Bodoni" typeface is
used in commerce, is non-functional, is inherently distinctive and has acquired secondary
meaning in the marketplace and trade and become recognized as a public guaranty of origin and
quality.

98.     Defendants, without authorization from the Plaintiffs, have used the trade dress
"design: Vignelli" and essentially the same trademark in advertising, promotion, sale and/or
offering for sale their infringing 2018 Book.

99.     Defendants have falsely advertised that the 2018 Book is co-designed by
Massimo Vignellli and endorsed by the Vignelli Estate. Upon information and belief, Defendants
have made these false statements at least during the 2018 Book promotion event launch and at
least for a period of time online and within the 2018 Book itself which is being sold in interstate
commerce. Such false statements are highly material and likely to influence the purchase
decision of the buyers who will buy the book thinking that it is in fact, endorsed and co-designed
by the famous Mr. Vignelli.  Such misleading statements are damaging plaintiffs' reputation and
likely to affect the sales of plaintiffs' authentic products, including the 1990 book, which
compete with the misleading 2018 Book.

100.    Defendants false representations in connection with the distribution, advertising,
promotion, offer for sale and/or sale of 2018 Book is likely to cause confusion, mistake or
deception as to Defendants' affiliation or connection with Mr. Vignelli, and is likely to cause

consumers to believe, in error, that Defendants' 2018 Book has been authorized, sponsored, approved, endorsed or licensed by Massimo Vignelli, his Estate or Vignelli Design.

101.    Defendants' use of the design:Vignelli trademark and trade dress is without Plaintiff's permission or authority and in total and willful disregard of Plaintiffs' rights to control and license the same.

102.    Defendants acts are willful and aimed to cause confusion in the public so that Defendants capitalize upon Massimo Vignelli's and now his Estate's goodwill and reputation.

103.    Defendants' acts are calculated to deceive, and are likely to deceive, consumers who recognize and associate the white font on vivid red background with Vignelli. Moreover, this conduct is likely to cause confusion or to deceive consumers as to possible affiliation, connection or association between Defendants and their infringing 2018 Book product, and the authentic 1990 book of Massimo Vignelli, which the Estate still sells.

104.    In addition, Defendants' acts have and will continue to damage Plaintiff's goodwill and reputation.

105.    Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are entitled in law or equity.

106.    Upon information and belief, Defendants will continue with their infringing activities unless restrained by the court.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants:
(1) Issuing a permanent injunction preventing Defendants from using the "design:Vignelli" trade dress or anything confusingly similar thereto on the 2018 Book;
(2) Enjoining Defendants from using any false designation or representation of origin in connection with the offering for sale or sale of books, or any false description or representation, including words or other symbols, tending falsely to describe or represent Defendants as Vignellis or associated or connected to Mr. Vignelli, or Defendants' books as being those of Mr. Vignelli, or as being associated with Mr. Vignelli or Vignelli Estate, and from offering such books in commerce;

(3) Order Defendants to implement corrective advertising correcting the false statements in all their sales, marketing and distribution channels or avenues;

(4) Awarding monetary damages Plaintiffs in an amount to be determined at trial as a result of Defendants' willful infringement of Plaintiffs' trademark and trade dress;

(5) Awarding Plaintiffs attorneys' fees and costs of this action.

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## TRADEMARK INFRINGMENT UNDER NEW YORK COMMON LAW
### (against all Defendants)

107.    Plaintiffs repeats and reiterates the allegations contained in paragraphs "1"

through "106" as though fully set forth herein.

108.    Plaintiffs own all right, title and interest in and to the word mark VIGNELLI and

logo mark "design: Vignelli", including all common law rights in such marks.

109.    The aforesaid acts of Defendants constitute trademark infringement in violation of

the common law of the State of New York.

110.    Upon information and belief, by their acts, Defendants have made and will make

substantial profits and gains to which they are not in law or equity entitled.

111.    Upon information and belief, Defendants intend to continue their willfully

infringing acts unless restrained by this Court.

112.    Defendants' acts have damaged and will continue to damage Plaintiffs.

113.    Plaintiffs do not have an adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:

(1) Enjoining the Defendants from using the Vignelli trademarks, or any reproduction, or colorable imitation of the Vignelli trademarks, on or in connection with any goods or services, including but not limited to the 2018 Book;

(2) Awarding Plaintiffs damages in an amount to be determined at trial arising from Defendants unauthorized use of Plaintiffs' trademarks;

(3) Awarding Plaintiff's attorneys fees as well as the costs and disbursements on this action due to Defendants' willful infringement;

(4) Grant such other and further relief as it deems appropriate.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR TRADEMARK DILUTION
### Under New York Law Section 360-l
### (against all Defendants)

114.    Plaintiffs repeats and reiterates the allegations contained in paragraphs "1" through "113" as though fully set forth herein.

115.    Plaintiffs are the exclusive owner of the VIGNELLI word and logo trademarks throughout the United States, including the State of New York.

116.    The word mark "Vignelli" and the logo/brand and trade dress "design: Vignelli" in white letters with vivid red color background in "Pantone Super Warm Red" also known as "Vignelli Red" with white letters in "Our Bodoni" typeface have become famous through their prominent, more than 40 years continuous use in commerce. The marks "design:Vignelli," and "Vignelli" became well known in New York and around the world.

117.    The trademarks have been advertised by Lella and Massimo Vignelli during their lifetime in connection with their design services and goods that they designed and commercialized. The trademarks have been reproduced on the cover of the authentic Massimo Vignelli's 1990 book.

118.    The trademarks are incorporated without Plaintiffs' authorization on the cover of the infringing 2018 Book and the cover is a complete replica of the famous and authentic 1990 design:Vignelli book. Defendants distribution, promotion, offering for sale and/or sale of the infringing 2018 Book constitutes commercial use of the Vignelli trademarks. Yet, the infringing product has a quality that does not correspond to the high Vignelli standards; it is a complete departure from the Vignelli Cannons and the Vignelli principle of "less is more" and contains multiple flaws and inaccuracies. The association of the inferior infringing product with Vignelli's creations is damaging to Plaintiff's reputation, prestige and goodwill.

119.    The fact that the 2018 Book is in the market purporting to be Massimo Vignelli's last work and the result of his brilliant mind is not merely deceiving but also damaging to Vignelli's legacy in design as well as the manner in which the Vignelli teachings will influence future generations of designers worldwide.

120.    The infringing book not only damages Plaintiffs' reputation, but also dilutes the distinctive quality of the Vignelli marks and is likely to lessen the capacity of the marks to uniquely identify and distinguish Vignelli's work.

121.    By the acts described herein, Defendants have diluted the distinctiveness of the Vignelli trademarks and have harmed Plaintiffs reputation in violation of New York General Business Law § 360-1.

122.    Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not entitled.

123.    Upon information and belief, Defendants will continue their willfully infringing acts unless restrained by this Court.

124.    Defendants' acts have damaged and will continue to damage Plaintiffs, who have no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:
(1) Enjoining the Defendants from engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Vignellis' business reputation or dilute the distinctive quality of the Vignelli trademarks;
(2) Enjoining Defendants from using Vignelli trademarks, Vignelli Designs, and Vignelli Associates and Vignelli works for any purpose and in particular, to advertise and promote Defendants' own business;
(3) Grant such other and further relief as it deems appropriate.


**AS AND FOR A FIFTH CAUSE OF ACTION FOR MISAPROPRIATON OF SKILL, LABOR, GOODWILL AND REPUTATION UNDER THE NEW YORK LAW, GBL 133 (against Defendants Beatriz Cifuentes and Waterhouse Cifuentes, LLC)**

125.     Plaintiff repeats and reiterates the allegations contained in paragraph "1" through "124" as though fully set forth herein.

126.     Upon information and belief, Defendants Beatriz Cifuentes is owner of the entities Waterhouse Cifuentes, LLC. Upon information and belief, Cifuentes controls and uses said entity interchangeably in dealings with third parties, and in furtherance of her personal goals.

127.     Upon information and belief, Ms. Cifuentes personally or through Waterhouse Cifuentes, LLC uses the name "Vignelli" and "Vignelli Associates" as well as the Vignelli trademarks to deceive and mislead the public in believing that she has authority to use the name and trademarks belonging to the Vignelli Estate.

128.     Ms. Cifuentes alone or through her entities, with intent to deceive or mislead the public, has assumed, adopted or used for advertising purposes the Vignelli trademarks and Vignelli Associates.

129.      Ms. Cifuentes alone or through her entities has advertised the 2018 Book on the Vignelli Associates Facebook page without Plaintiffs' authorization.

130.     That even though Massimo Vignelli is not a co-designer of the infringing 2018 Book, he is credited as such solely for purposes of taking a financial advantage from the goodwill that the public associates with the Vignelli name.  A statement on the title page reads "Designed by Massimo Vignelli and Beatriz Cifuentes-Caballero."

131.     That the cover of the 2018 Book is visually similar to the homonymous 1990 Book and the title appears with same signature font white letters over a vivid red background, as the one used on the 1990 book.

132.    That the addendum to the infringing book specifically stated that the explanatory texts were authored by Massimo Vignelli and used with the permission of the Estate, which is untrue. That the addendum implies that Plaintiffs, the Estate and Vignelli Design Inc. authorized the use of the works, which is false and misleading.

133.    That Defendants intentionally used Vignelli's name and Vignelli trademarks to mislead the public to associate the infringing product with Vignelli Design, Inc., which among others manages Vignelli's licenses.

134.    That Defendants' actions were intentional and calculated with the sole objective to deceive the public and thereby increase the popularity of the 2018 Book to generate unwarranted sales and income for the sole and exclusive benefit of the Defendants.

135.    That Defendants did not have Plaintiffs' authorization for the publication of the 2018 Book with the aforementioned references and statements.

136.    That Defendants acted willfully as they knew that the Plaintiffs did not endorse the 2018 Book and nonetheless proceeded to its publication.

137.    That as a result of Defendants' misappropriation of Plaintiffs' goodwill, labor and reputation, Plaintiffs have suffered damages in an amount to be determined at trial

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:

(1) Restraining Defendants from using the Vignelli Associates Facebook page to promote the infringing 2018 Book or to convey any association between Vignellis and the 2018 Book;
(2) Restraining Defendants from using Vignelli trademarks, Vignelli Designs, and Vignelli Associates and Vignelli works for any purpose and in particular, to advertise and promote Defendants' own business;
(3) Directing Defendants to return all materials and property belonging to the Vignellis to the Vignelli Estate, including without limitation, awards, sketches, documents, domain names as well as access and administration rights to websites and to social media platforms;
(4) Awarding Plaintiffs monetary damages for Defendants' misappropriation in an amount to be determined at trial; and
(5) Grant such other and further relief as it deems appropriate.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR FALSE ADVERTISING UNDER THE NEW YORK LAW, GBL 350
### (against all Defendants)

138.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through "137" as if fully set forth herein.

139.    That Defendants affirmative misrepresentations were material and substantially uniform in content, presentation and impact upon customers at large. Customers purchasing the infringing book were and continue to be exposed to Defendants material misrepresentations.

140.    That Plaintiffs are still commercializing the original 1990 book and Plaintiffs and the public at large have been damaged by the sale of the infringing book.

141.    Defendants are consequently in direct competition with Plaintiffs because it is Plaintiffs' intention to sell the 1990 book without having the risk of consumer confusion with the new unauthorized version.

142.    The fact that Defendants marketed and sold the 2018 Book stating that the 2018 Book was endorsed by the Estate of Massimo Vignelli and was his design are unfair, deceptive and misleading to the public and in violation of the NY GBL § 349.

143.    That the fact that Massimo Vignelli actually designed the book is a material factor in the decision of the consumer to purchase the 2018 Book and disburse its hefty price tag.

144.    A reasonable consumer will expect that a book allegedly authored and designed by Massimo Vignelli would follow the utmost quality in design since the name Vignelli has been an indicator of such quality for decades.

145.    At the point of sale, customers would not know or have reasons to suspect that the book that they are buying is not designed following Vignelli's design cannons and was not designed by Massimo Vignelli.

146.    Plaintiffs, who are still commercializing the original 1990 design:Vignelli book, and the public at large have been injured by Defendants' false advertisement.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement in favor of Plaintiffs as follows:

(i)     Restraining Defendants' from continuing to advertise the Book and claiming that the Book is designed by Massimo Vignelli and endorsed by the Vignelli Estate;
(ii)    Awarding Plaintiffs monetary damages for Defendants' misappropriation in an amount to be determined at trial; and
(iii)   Awarding attorneys' fees and the costs of this action; and
(iv)    Grant such other and further relief as it deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38.

Dated: February 20, 2019
New York, New York

BY:  CHINTA PERDOMO BERKS & FRATANGELO, LLP

/s/Francelina M. Perdomo
Francelina M. Perdomo, Esq.
Antoaneta V. Tarpanova, Esq.
Padmaja Chinta, Esq.
Attorneys for Plaintiffs
17 State Street, Suite 4000
New York, NY 10004
(212) 274-1261
fperdomo@chintaperdomo.com